I appreciate the opportunity to make an oral argument in this case, but I'd like to reserve three minutes for rebuttal. We believe that the briefs adequately set out the issues and the arguments in the case, and I would just like to invite Your Honor's questions regarding the issues in the case and the arguments presented. Well, I wish that you would address the credibility findings. Yes, Your Honor. Essentially, Your Honor, our argument is that the immigration judge repeatedly qualified his adverse or the findings regarding adverse credibility. He didn't call them adverse credibility when he went through them. He said they were collateral matters, essentially. He said they were not significant matters. But then at the end of the analysis, he made an adverse credibility finding. And so our argument essentially is that out of several molehills, a mountain is not made. And so that is our position on the credibility issue. Counsel, even if we agree with you and we credit everything that the petitioner said, why would that rise to the level of persecution? Well, we believe past persecution is established in this case because of the problems that he encountered in Indonesia. But you would agree, wouldn't you, that merely encountering problems does not rise to the level of persecution? The cumulative effect of those incidents, Your Honor, may rise to the level of past persecution. May rise to the level of persecution. We believe that they do rise to the level, and that is seen V-I-N-S, cumulative effect. Articulate for us the specific incident you're relying upon to assert past persecution. Yes, Your Honor. Thank you. The first incident occurred in 1987. How old was the petitioner? He was either 11 or 12 years old at the time, Your Honor, and there were two --. How long was that? How far was that removed from the time of the petition, of the time of the application? That was pretty far removed. Approximately 13 years, Your Honor. He was beaten with a bicycle chain. He incurred a scar on his forehead. So we have one incident where he was beaten, and what evidence was there that the beating was connected with one of the protected categories? Well, we're claiming, Your Honor, that it's based on ethnicity because of the historic discrimination against the ethnic Chinese in Indonesia. But in that particular incident, was anything said or done that indicated ethnicity was the motivating factor? It doesn't seem so, Your Honor, but they did ask for money. The reasonable inference oftentimes in Indonesia is that there's a perception that all of the ethnic Chinese have a lot of money. Well, this is the problem I have. I grant you that he may have been attacked because he was Chinese. Let's just assume that. But there's a history of ethnic conflict in Indonesia, and the Chinese as an ethnic group has been targeted, if we assume that. But don't you have to show more than that, the ethnic conflict? Don't you have to show that your client was specifically targeted, apart from even more than the ordinary Chinese ethnic person in Indonesia? I believe that's a fair statement, Your Honor. One starts with a foundation of anti-Chinese laws, which is remarkable in the 21st century, to say the least. But there has to be a plus factor, certainly, and that plus factor would be the incident that occurred in 1987. Okay, we have the one incident that took place 13 years before the application. What else do you have? Well, Your Honor, I believe he says that he was also slapped on occasion there. We also have the pattern of practice evidence with respect to his brother, Benedictus. During the May 1998 riots, Petitioner was not in Indonesia at that time. His brother suffered cracked ribs during the riot, and he was pulled out of a taxi cab, and he was injured, certainly. And he testified, that is, the Petitioner testified, that at a minimum his brother, Benedictus, had a Chinese appearance, and so he was readily identifiable that way. So that's pattern of practice evidence. The other thing is the death of his cousin, who was ethnic Chinese as well. So what we posit as an equation, if you will, in these cases, where assuming arguendo, past persecution doesn't exist, is that we take the personal experiences of the applicant and then add to that pattern of practice evidence and add to that country conditions. And we believe in this case that that equation works out to a well-founded fear of future persecution. Okay. Thank you. Judge, I think we should. Yes. I was going to suggest that I think we understand your position, and we might hear from the government. Thank you, Judge. I appreciate that. Thank you. Good morning, Your Honors. May it please the Court. Margo Nadel for the United States. The instant position for review should be dismissed. The immigration judge properly denied the petitioner's request for relief and protection for two reasons, either one of which sustains the judgment. First of all, petitioner's testimony contained multiple inconsistencies. Second of all, the petitioner could not establish past persecution or a well-founded fear of future persecution. In terms of the inconsistencies, the petitioner was inconsistent with respect to his testimony regarding his trip to Canada for a single day, first testifying that he went to Canada for a single day to see the sites and travel and visit, then testifying that he actually sought to evade immigration consequences in the United States in terms of the one-year bar for asylum. Counsel, what's your response to opposing counsel's observation that the immigration judge characterized these as collateral matters and was pretty equivocal about whether or not they were central to the claim? The immigration judge did, as you say, equivocate with respect to the centrality of these claims to the petitioner's overall claim for relief. However, taken together, the overall picture that these inconsistencies provided was one of lacking, one in which the petitioner lacked credibility, and that taken together these inconsistencies demonstrated that the petitioner was not credible. However, even if this court were to reject the immigration judge's adverse credibility finding, the immigration judge reasonably denied the petitioner's claim based on his failure to establish past persecution or a well-founded fear of future persecution. This court has repeatedly said that mere harassment does not equal persecution, and in this case you have a single incident in 1987 in which the petitioner's bike was stolen. He was a 12-year-old boy. A couple of teenage thugs stole his bike, hit him with a bike chain, and then after that he continued to return to Indonesia, which substantially undermines his claim to a well-founded fear of future persecution. He returned to Indonesia repeatedly over a period of several years. When did he leave Indonesia? He left in 1998. That was the last time I believe that he went to Indonesia. But in terms of petitioner's cousin and brother who both experienced, his cousin obviously was murdered. 1998 when the big riots were. That's right, the 1998 riots. But this court has held that in addition to demonstrating general countrywide strife, one must demonstrate that one is likely to be singled out for persecution. And in the instant case, the petitioner was simply unable to make that. You really have to concede, though, that he has a legitimate fear of going back. Well, Your Honor, even if this court were to find that he had a subjective fear of persecution based on the incident in which his bike was stolen in 1987 and the riots in 1998, that the immigration judge reasonably concluded based on all of the record evidence that the objective fear of persecution was not met, that it was not objectively reasonable for him to fear persecution, that he may have a subjective fear. But based on the fact that in the 1998 riots, the police actually stepped in and intervened. And one of the things that the petitioner has to demonstrate is that the court, pardon me, is that the government is unwilling or unable to control the actions of its citizens. And in this case, the police stepped in. When his brother was being beaten, they dispersed the crowd, and they took petitioner's brother to a hospital. So it would be very difficult, I think, for the petitioner to claim that the government is unwilling or unable to control the persecution. And that was also what the immigration judge found in his decision. If the court has any questions. Don't appear to be. Thank you. Thank you, Your Honor. Mr. Ryan, do you wish to say anything further? There was mention during the respondents' presentation of the questioning response council as to when he left Indonesia. And I believe the date was January 1998, which was before the May 1998 riots. With respect to whether the government is unwilling or unable to protect the ethnic Chinese, first of all, there are anti-Chinese laws in Indonesia. That gives one a pretty good picture of what the government thinks about the ethnic Chinese. But in terms of the persecution, opposing counsel articulated that the police came to the assistance of the petitioner's brother, and that was one of the incidents that you were relying upon to establish pattern or practice. So at least the government was willing to come to the aid of a Chinese person in that particular circumstance. So what's your response to that? We're not saying that the police don't respond in some cases. But wouldn't that defeat your pattern or practice argument if the police aid Chinese citizens? I don't think that one incident would defeat that argument, Your Honor. The fact is that the Indonesian government has not prosecuted anyone for the violence that occurred during the May 1998 riots. And I think that gives a pretty good picture of the treatment of the ethnic Chinese and the lack of protection in general. Okay. Thank you, counsel. Thank you, Judge. The case just argued is submitted for decision. We'll hear the next case, Suparman v. Ashcroft. I probably didn't pronounce that correctly. Yes, you did, Your Honor. Suparman is correct. Your Honor, again, I'd like to reserve three minutes for rebuttal. The main issue in this case is substantial evidence. And, again, I believe that the issues have been adequately briefed, and I will entertain the questions from the panel. Well, let me ask this question. Yes. For your position that there's a well-founded fear of future persecution, are you depending on anything other than the presumption that arises from past persecution, or do you think there's some showing made independent of that? Well, Your Honor, there is a showing that can be made independent of past persecution, and essentially it's this. Even if one cannot show past persecution, the applicant's past experiences, plus pattern or practice evidence, plus country conditions, may equal a well-founded fear of future persecution. And, of course, the standard set out by Supreme Court and INSB, Cardozo-Fonseca is that a 10% chance of persecution is sufficient to establish a well-founded fear of future persecution. What theory are you relying upon specifically in this case? Well, Your Honor, we take the position that he has established past persecution. On the other hand, even if that's not found, then the well-founded fear of future persecution analysis was particularly fixed. What incidents do you claim established the past persecution in this case? Well, Your Honor, he said that he was frequently insulted based on his ethnicity. What case authority do you have that says an insult based on ethnicity constitutes persecution? It was called racist names is what the insults. But what case says that that's sufficient to constitute persecution? There wouldn't be any particular case, Your Honor, that one could cite simply for the proposition that somebody was called racist names. Because if that was persecution, then we probably would have no basis to exclude anyone from asylum. That's correct, Your Honor. So there are other factors. Setting aside the ethically charged insults, what else do you have? He also said that he would be a hit when asked for money. Native Indonesians would ask or really demand money from him. And how often did that occur? He doesn't – I don't believe it was set out in the record as to how often that happened, Your Honor. But he said that it was evidently frequently. Also, in 1998, he was working at a bank in West Jakarta. And during the riots, he wasn't injured himself, but he could see smoke from the 11th floor of the office building in which he was in. And fortunately, he was able to escape and to get home safely. He also – Can I ask you this? Yes, Your Honor. The IJ commented on the fact that his family is living in Indonesia. Is there anything in the record which would indicate that he is more likely to be persecuted than members of his family? There's nothing in particular, Your Honor, on that point. But if I may address the concept of what we would describe as family whereabouts, the circuit has held that information about family members isn't necessarily probative of the future fear that the applicant may face. Counsel, don't you have to show that he's situated differently than his family? I think that was the gist of the Chief Judge's question is what about his circumstance makes it more likely that he would be persecuted if his family is not? Well, we respectfully disagree with the premise, Judge Wallace, and the reason is this. What premise are you disagreeing with? The premise that any type of future persecution to his family members would be necessarily probative of his case. That's the point. The point is if his family members are not being persecuted, then you must show that he somehow is differently situated such that he has a reasonable fear of future persecution. Would you agree? Not necessarily, Your Honor. Here's why. His family members were not before the court, so one makes the assumption that he knows everything that's ever happened to his family members or even knows what's happening to his family members now or at the time of the hearing. Well, he does have to give the evidence to support his asylum claim, so he has the burden of producing something to support his asylum claim. Well, as this Court said in Hartooni v. INS, information about the parents in that case, this information about the applicant's parents is hardly relevant to the applicant's own, underline own, well-founded fear of persecution. Standing alone, this information would not have been sufficient to defeat the applicant's claim. Assuming that the applicant has some independent evidence of prospective persecution of the applicant. That's correct. And we believe that he's met his burden on that score. It's not the family situation is not dispositive, but it is, you would agree, relevant. Not necessarily under Hartooni, Your Honor, for the reasons stated. And I understand the case law of the circuit in Hoxa and Quadras and other cases, but we do take the position that it isn't necessarily, it certainly isn't dispositive in this case. And also what makes this petitioner subject to persecution? You know, you've told us it's not dispositive that his family has not been persecuted, but what about this particular petitioner then? What subject him to persecution? The fact that he has suffered persecution in the past, that he is a Christian. And if I may go back just briefly to the point about family whereabouts. Under Madaripula, the adverse factor, quote-unquote, has to be egregious to trump asylum. So that really finishes off the analysis on that. You have about two minutes left, if you'd like to say something. Yes, Your Honor. I think I'll close at this point. Thank you. Thank you. Mr. Campbell. May it please the Court. My name is Isaac Campbell, and I represent the United States in this matter. Your Honor, in this case, petitioner dispelled to me his burden establishing asylum, eligibility for asylum. And the pertinent issue before this Court is whether the substantial evidence requires this Court to grant asylum to petitioner. And in this case, it does not. Petitioner claims that he was persecuted on account of two things, his ethnicity and his religion. And he recounts three incidents with respect to that. He says that in 1966, when he was a child, basically that he was called names and that he was bullied for money. And this Court has not held that such things constitute persecution. He does not claim anything else occurred until 30 years later during the riots. He says that there was, during the riots, that there was damage to his property. On page five of Petitioner's Own Brief, he does concede that the damage done during the riots was not only done to the ethnic Chinese. There were other groups that had property damage during the riots. And this Court has held that countrywide strife that's going on, countrywide, in this case citywide, does not constitute particular persecution, which is what petitioner speaks to. How long has this petitioner been in this country? Petitioner has been here. Of course he does, Your Honor. I believe since he was admitted October 24th, 1999. Petitioner was admitted here. Petitioner. He came soon after the riots, and he's been here ever since. Well, it depends on how you define soon, Your Honor. Well. The riots occurred in May of 1998, and he was admitted in October of 1999. And, in fact, that's one of the issues that, in terms of what he alleged happened to him, after the riots and alleging what happened during that time, he doesn't allege any specific or direct incidents occurred to him, and he was able to reside in Indonesia without incidents after the riots. He does allege that in January of 1999, someone threw stones in the vicinity of his parents' house. But he does not know who threw the stones. He cannot reasonably conclude what was done or why it was done on that basis. But since the riots, that's the only issue he mentioned that was not directed towards him. And, quite frankly, he cannot even reasonably conclude that it was aimed at the family's house. He just said it was thrown in the vicinity. But I think that is an important point, that he was able to reside in Indonesia without incident prior to his coming to the United States. With respect to his claim that he was discriminated on the basis of religion, he does state that he was unable to attend services at his own church, but he says that he did not do that because there were large crowds gathering for a demonstration, and so because of that he didn't go. But that certainly does not mean that he was targeted himself or that that somehow constitutes persecution. So that, Your Honor, in looking at the issues that he has set out, and Petitioner does bear the burden of at least describing the incidents, and the incidents he describes do not rise to the level of – Doesn't it bother you a little to keep arguing that he wasn't targeted, when you know that anybody who is – looks like he or she is Chinese is going to be targeted? I mean, isn't that the history, the recent history of Indonesia? I think that – I think there are two things, in terms of looking this into the context, to respond directly to your question. I think that while there is – I think that while there have been some issues with people, for example, the ethnic Chinese in Indonesia, I think there are two things to put into context. The first is whether or not what occurred rises to the level of persecution. There may be some issues there, but is that enough that it rises to the level of persecution? And more importantly, in this case, did Petitioner suffer to the extent that he can then make that claim that he suffered and somehow warrants asylum? And in this case, I would say that he has not. Secondly, I cannot say, nor is there any evidence in the record to show that what your Honor, the question you asked about ethnic Chinese suffering, whether or not that is something that is a continuing, declining, et cetera. But in terms – so that in terms of his specific – the specific incidents he talked about, they don't rise to the level of persecution. Secondly, even the incidents that he's mentioned, he's not been able to show that even on those incidents, that he was somehow targeted either because of his ethnicity or because of his religious beliefs. And lastly, because he was able to reside without direct incidents after the riots, that also undercuts his claim. And so looking at all that in total, the pertinent question here is that the substantial evidence does not require the conclusion that Petitioner is – should somehow – is eligible for asylum. Finally, Petitioner has not shown past persecution. There is no showing of future persecution in that, one, he doesn't get the presumption because there was not a showing of past persecution. Secondly, any reliance on future persecution is undercut by the ability of this family, who Petitioner concedes are also Christian and are also ethnic Chinese, the same grounds Petitioner relies upon, that they've been able to reside safely in Indonesia. Petitioner takes issue because they were not residing in Jakarta specifically, but the fact remains that they have been able to reside safely. There's no reason that Petitioner – he bears the burden of showing that there are others, if he's making that pattern of practice claim. He hasn't offered any evidence to say anything that this family is suffering. There's no evidence of record there. The record shows, at least suggests, that they are able to reside there safely. Counsel, what's your response to opposing counsel's citation of Hartooni for the proposition that the relative safety of his family is irrelevant to his circumstance? What's your response? And that would be my final point, Your Honor, in terms of the counsel's response to Hartooni. In that case, it stands to the proposition that if the ability of the family to reside safely may not be dispositive, and even in his own brief, when he goes on to quote the rest of the case, in that case it was shown that there was something unique or specific that this petitioner would suffer. As this court has raised with opposing counsel, that's not the case here. In this instance, Petitioner concedes that his family is similarly situated, that they are both Christians and ethnic Chinese, the grounds that Petitioner claims. And Petitioner has made no showing – has not provided any evidence to show that they are – have been targeted or there have been any incidents. And so his reliance on Hartooni is misplaced in this particular instance. Okay. I think you've stated your position very well. Thank you, Your Honor. Thank you, counsel. Mr. Ryan. The fact that he came here in October 1999 shouldn't be held against him in any way. Indonesia is a country that is about 80 – about 8,000 miles from here. It's very difficult to just pick up and leave in terms of – He did enter legally. Yes, he did, Your Honor. And if Your Honors have any other questions, I'll take them now. Don't appear to be in – We'll submit. We'll submit. Thank you, Judge. The case just argued is submitted on the – is submitted for decision. We'll hear the next case, which is Holland v. Ashcroft.
judges: Schroeder, Tashima Rawlinson